In re ST. CROIX HOTEL
CORPORATION, Debtor
in Possession.

The BANK OF NOVA
SCOTIA, Appellant,

v.

ST. CROIX HOTEL CORPORATION,
Appellee and Cross Appellant.

Civ. No. 84/218.
Bankruptcy No. B–81000003.

D. Virgin Islands,
Division of St. Croix.

Nov. 2, 1984.

Lary D. Ratliff, Christiansted, St. Croix, V.I., for appellant.

Joel H. Holt, Christiansted, St. Croix, V.I., for appellee.

## MEMORANDUM OPINION

DAVID V. O'BRIEN, District Judge.

The issue in this case is whether the Bank of Nova Scotia, (the "bank"), should be required to post $1,000,000 in cash for

its purchase at judicial sale of St. Croix by the Sea Hotel. This hotel is the major asset of the debtor herein. The bank claims a valid security interest in the hotel, but the debtor argues that any interest of the bank is not an "allowed claim" as provided for in 11 U.S.C. § 363(k), and thus the bank must pay cash and not be allowed a setoff.

We will find on an intermediate basis for the bank and will fashion an order which will protect all parties.

## I. FACTS

When the St. Croix Hotel Corporation, (the "debtor"), went into bankruptcy and sought to reorganize itself, the bank filed a proof of claim of $3,414,158.39 as a secured creditor. It holds mortgages on various real properties owned by the debtor, with the major piece of realty being the St. Croix by the Sea Hotel on St. Croix's North Shore.

The debtor objected to the secured claim, and an adversary proceeding is pending in this court before Chief Judge Almeric L. Christian. It will come on for jury trial on November 26, 1984.

In the meantime, the bankruptcy judge ordered that the hotel be sold at judicial sale. The trustee for the property held the auction on January 17, 1984, and required a minimum bid of $1,000,000. The bank made such a bid, stating that it was doing so as a secured creditor of the debtor. There were no other bidders. The sale was, pursuant to law, free and clear of all encumbrances.

The trustee required the bank to post the $1,000,000 in cash, (10% down and the balance within thirty days). The bank objected and the matter was presented to the bankruptcy judge. At the same time, the debtor and others objected to the sale, claiming that even if approved, the sale price should be paid in full without offset, and that the million dollar offer itself was insufficient. By order dated March 13, 1984, the bankruptcy judge approved the sale and directed the bank to pay the full one million dollars in cash, without offset.

The bank appealed, briefs were filed, oral argument was had, and the matter is now ripe for decision.

## II. ISSUES

Essentially, the Court has two issues before it: (1) should the sale have taken place at all, and if so (2) can the bank offset the purchase price against the amount it asserts as a secured claim?

## III. DISCUSSION

### A. *Should the Sale Have Taken Place?*

The sale of the hotel in January, 1984, was not the first time the hotel was sold. An earlier sale had taken place, but fell through when the purchasers could not complete their end of the bargain. At that time, the sale price was approved at one million dollars. It was only after the collapse of the first negotiated sale that the bankruptcy judge ordered the sale of the hotel at auction.

The record does not reflect any objection by the debtor to this action of the bankruptcy judge prior to the sale. Rather, all objections, by the debtor, the creditors' committee and others, took place afterwards.

█ Given the circumstances at the time, we see no reason to disturb the findings of the bankruptcy judge and his order for sale by auction, and the claim by the debtor that the hotel should not have been sold at all is without merit.

### B. *Is the Bank Entitled to an Offset?*

The primary issue with respect to the bank's claim of the right to assert a setoff as a secured creditor has to do with an interpretation of 11 U.S.C. § 363(k), which states:

(k) At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

Was the bank the holder of an "allowed claim"?

The definition of "allowed claim" is contained in 11 U.S.C. § 502(a) and (b), which state:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.

(b) Except as provided in subsections (f), (g) and (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of filing of the petition, and shall allow such claim in such amount...

The Debtor did object to the bank's proof of claim. The matter went to trial on one occasion and a jury verdict was entered. However, it was vacated on appeal and a new trial was ordered by the Third Circuit. Therefore, up to this date, whether the bank had an allowed claim has not been finally determined.

On the face of the statute, since at the time of the sale the bank did not have an "allowed claim", it should not be entitled to an offset. But this ignores the fact that the bank continues to this day to assert a secured claim and, without the fault of the bank, that issue has not yet been resolved.

The bank promptly filed its notice of a secured claim in an amount far in excess of the bid price of one million dollars. Its claim of a lien is a public record against the hotel property.

■■■ The intent of Section 363(k) is clearly to permit only those persons with a valid security interest in property to be sold to claim a setoff. And the issue of whether such a security interest actually existed was obviously intended to be resolved prior to the date of sale of the property. In this case that determination was not made prior to sale.

If the bank were required to pay the one million dollars in cash, notwithstanding its assertion of a secured claim, that fund would be available for other expenses of the bankrupt estate. If, in the future, that

claim was validated as an "allowed claim", the bank would have the right to recoup the amount paid in cash, without any assurance that the full amount of the fund would still be in existence. The possibility of depletion of the million dollars by administrative and other expenses, while the issue of the bank's claim was still pending, was conceded by counsel for the debtor at oral argument.

This would be an elemental unfairness to the bank.

■■■ There is another way, fair to all, available in this unique situation since the purchaser is one of the largest financial institutions in the world, with resources quickly available to meet any obligation involved herein. We will permit the bank an offset on an intermediate basis, to become permanent, or to be negated as the case may be, upon the final determination of whether it is entitled to an "allowed claim".

If the bank prevails at trial of the issues on November 26, 1984, or after final determination of an appeal, and its claim is allowed at one million dollars or more, then the issue is moot.

If the bank does not prevail, and its claim is wiped out, disallowed, or expunged in any way, the bank will be required to promptly pay over the million dollars, with interest compounded. And the rate of interest will be the same rate the bank itself would pay in New York City to customers for million dollar certificates of deposit on a rolling thirty day basis. The date for which interest will begin earning is January 17, 1984 on the first $100,000, and February 16, 1984, and every thirty days thereafter, on the full million dollars. The interest earned in such a thirty day period will be rolled over to become part of the principal for the next thirty day period. We will require compound interest rather than simple interest, because the debtor and its creditors will not have had access to such funds during the intermediate period.

By requiring interest to be paid at the same rate the bank offers for million dollar

certificates of deposit on a thirty day basis, we assure that the bank does not gain any benefit from the use of the money that it does not pay for, and that the debtor and its creditors will have a fair return on the purchase price during the period the funds are tied up pending final resolution of the issue of the bank's claim.

With the conditions recited herein, the sale of the hotel property to the bank will be confirmed and the bank will obtain immediate possession of the property.